Thank you, sir. My name is Jose Bracamonte. I represent the petitioner in this case. The petitioner is a citizen of Nepal, co-owner of a film production company in Nepal. They came to the United States on a B-1 visa and remained in the United States and applied for political asylum, withholding of removal, and protection under the Convention Against Torture. Now, the substance of his claim is as follows, that he was targeted for extortion and threatened with harm by the Maoist guerrillas that operated then and still operate in the country of Nepal. The Board of Immigration Appeals, substantially agreeing with the immigration judge's decision, denied the application on multiple grounds. But one of the salient grounds was that the board dismissed the petitioner's claim because he failed to adequately define a particular social group. Specifically, the BIA held that the designated group of wealthy in Nepal was too indeterminate a group to serve as the particular social group, and they cited the board decision of AMEJGU for that proposition. The petitioner agrees that that case stands for the sufficient to constitute a particular social group. But even within AME, the board recognized that wealth may be a shared characteristic of a more defined social group. So what is this more defined social group that the petitioner asked for? He defined his social group as business owners in Nepal. And the sum and substance of our argument is that land ownership, to the extent it is a defining characteristic of a particular social group, and there's a long line of cases of that. Of course, the matter of Acosta, the seminal case in 1985, used land ownership as an illustrative example. Our position is that business ownership is tantamount to land ownership. So if we follow the analysis, then it's the petitioner's conclusion that AME was not properly used for this citation. The board and the immigration judge needed to address the more defined subgroups within this wealthy strata. The board admitted, however, that the immigration judge never addressed the issue of whether businesspersons could constitute a particular social group, even though it acknowledged that it was simply saying, and I quote, neither group is sufficiently particular to form a cognizable social group. But the board did not engage in the traditional analysis of does this group have a shared common characteristic? Does it have a shared experience by which it creates an identity that is fundamental and ought not to be changed? We've said that as to land ownership. We recently said that in this circuit in the case of Cordoba, recognizing that that was such. And we submit that the reason that land ownership is so distinct is because of the business conducted on the land. It's not simply legal ownership of the land. Counsel, Judge Gould, I apologize for interrupting your argument on social group, but I wanted to make sure in the case of Cordoba that the board did not address the issue of whether there was past persecution, which you haven't touched on yet. No, sir, I have not. That's one of the multiple, as I noted, multiple grounds. Let's address past persecution. The petitioner in this case argues that he has established past persecution and has established well-founded fear of future persecution. That's elaborated in the brief, but if I may summarize our argument, there was the record shows that there was two confrontations with the Maui's guerrillas that affected the petitioner. The second confrontation in November of 2004 involved individuals that displayed weapons that threatened to kill the individual and mentioned another person known in the film community that was recently executed. All of that to us establishes that this confrontation established that the Maui's guerrillas had an immediate, credible threat of danger, and that the reason they mentioned the other person was to show that they were willing and able to carry out their threats. Now, we also argued as to past persecution that this confrontation, these threats, indeed the execution of that other individual was part of a pattern and practice recognized by our own government in the country reports. Second, as to the well-founded fear of persecution, when you look at the element for well-founded fear of persecution, the respondent, excuse me, the petitioner in this case was targeted for persecution. Indeed, his family suffered violence. His brother, again, established in the record and noted by the DIA, was subsequently detained by the Maui's and mentally tortured by them, which to me shows that, again, one of the elements of well-founded fear is there's a pattern and practice of persecution of persons similarly situated or of family members. And I think in this case, the brother was both. He was a business owner of a small computer company and as well as a family member. We believe that those facts on the record establish both past persecution and well-founded fear of persecution, sir. Now, as to, if I may return to the particular social group, it's important to note that the clarifications and refinements offered by Enrique Rivas in this circuit and by Cordova would, if you insert business owners and remove landowner, the analysis would be substantially similar. In other words, business ownership creates a past shared experience that is fundamental to identity or to conscience. It's true that landowners are wealthy usually, but that's not a limiting or disqualifying qualification, as AME pointed out. Now, it's also true that landowner, one of the reasons landownership is a particular social group is because of particularity. It can be relatively easily determined if you are a landowner or not. Same is true of a business owner. It's relatively easy to determine whether that has occurred. So particularity is established. Now, as to social distinction, that's an issue that recently has received some refinement from ocular visibility to what is understood or perceived within the society. But one of the key factors, in fact, I believe Cordova said almost a dispositive factor, is what do the eyes of the persecutors see? And the persecutors, again, confirmed in the country reports, view business persons as political targets for their own funding and for their own political campaign. Well-founded fear of future persecution, that issue. There's a finding that if your client lived outside of the Kathmandu Valley for 11 months, that his brother continues to live a normal life without fear of harm, at least as far as can be determined, and that his wife and kids are living normal lives. I understand you have a position that's contrary to that, but in light of the fact that you have a substantial evidence standard that we have to apply, how do you address this issue? First of all, when you look at the persecutors and their targets, they do not target, it's not common that they target family members. That's not part of their at least announced agenda. I'm sure that rogues, elements and other people do it, but it's not part of their political plan. Second of all, sir, it's common in countries, Nepal is one of the poorest countries in the world, 80 percent of it is rural. It's common to have difficulty getting a visa to enter the United States, if not something that's readily available. So 11 months is a very reasonable period to hide and try to get a method to get out of there because of your fear. Now, I do reject, however, this notion that the brother somehow, you know, the board, that conclusion I just made, the brother is, oh, well, he was tortured, but he's fine now. He was tortured. He was mentally tortured. He was detained. He was tortured. He wasn't physically tortured, right? That's correct, sir. He was mentally tortured. Right. He was detained for days and subject to psychological torture. Yes, sir. But I would submit that that's not completely the definition. What authority is there that says that detaining somebody like that is equivalent to mental torture or could be considered by us to be torture? I believe, well, I think that, I don't know if the term, I will defer on the term torture. In terms of the definition, but does it constitute persecution? I think that arbitrary kidnapping and detention usually has been considered persecution. So I'll leave the term torture out of it, not to invoke other legal definitions, but certainly I believe that the treatment of that brother constitutes persecution, kidnapping against one's will. I believe would constitute persecution, and it's his brother. So it's a family member subsequent to his confrontation with them. So that's why I would submit that that brother did, although he may be in peace now, he certainly didn't leave him in peace after this confrontation. He was subject to some form of mistreatment by the Maoist guerrillas. I believe my time is almost up. Any other questions? Roberts. Let's hear from the government. We'll give you a chance to respond. Thank you, sir. May it please this Court. My name is Andrew Oliveira. On behalf of the Respondent, the Attorney General, Eric Holder. This Court should deny the petition for review because the evidence in the record does not compel reversal of the decision of the Board. The first and primary issue is whether or not the harm rose to the level of persecution and whether any future incidents would rise to the level of persecution to establish a well-founded fear. The record establishes that Poudel was threatened on two occasions and received extortion threats by the Maoists. Those incidents simply do not rise to the level of persecution. This Court has repeatedly discussed what conduct constitutes persecution with respect to threats and what conduct does not. And when you compare the conduct in this case, it simply does not compare to the cases where this Court has found persecution. And certainly nothing in the evidence compels reversal. Let me ask you to focus on the issue of whether he had a well-founded fear of future persecution, and in particular on the cooperation aspect of the IJ's ruling, because it strikes me that that ruling is now incorrect in light of Wren and cases following Wren. I guess I read the BIA's decision as perhaps falling into the same error such that we might need to send it back for reevaluation under the case law that prevails now. What's your response to that? Well, the Board did not actually uphold the immigration judge's decision on corroboration. It specifically declined to follow it and instead simply decided the case on the testimony and the evidence submitted. It did not deny his claim based on a lack of corroboration. So therefore, the subsequent case law is not necessary to the decision. Well, what are we supposed to do with footnote 1 of the BIA's decision, then? At most, it is harmless error given the fact that the Board evaluated his claim fully on the merits and did not require corroboration. Well, I mean, how do we know that, though? That I.J. clearly said, boy, if you had come forward, for example, with affidavits from family members who said that the Malas are still looking for you, that might have gotten you, you know, over the hump, but you didn't, and he was never provided notice of that, as I understand it. And I don't see anything in the BIA's decision that rejects that rationale. Well, they know they specifically said that they were not following the corroboration analysis of the immigration judge. Well, where are you talking about? There's one passage I can think of that I don't think is that clear, but maybe you're focusing on some other language. It would be on the second page of the decision paragraph. Because the Respondent did not establish paragraph? Yes. Well, but in light of footnote 1, I guess that's my issue, right? They got the law wrong in footnote 1 and basically said it doesn't matter because I.J. was permitted to do what he or she did, I can't remember. Well, I understand your concern about footnote 1. However, because the Board did not specifically follow the immigration judge's analysis, there's no final agency decision corroboration. So it is our opinion that the lack of corroboration is not a basis for the denial, according to the Board. With respect to the well-founded fear, the evidence reflects that his wife, children, and mother have all continued to live in Nepal completely unharmed. They go about their lives without any problems. The brother was, in fact, kidnapped and detained. Responding to your question, Judge Gould, this Court and the other courts' appeals have repeatedly held that detention alone does not equal persecution, especially for a limited detention of one day. Furthermore, there's nothing in the record to establish that the kidnapping of the brother was related to the petitioner, and finally the brother has continued to live his life unharmed, and I believe the quote was, he has a normal life. So that incident does not establish that petitioner has a well-founded fear of persecution because there's not a realistic possibility that he will suffer harm rising to the level of persecution. At least you're saying the record supports that. Correct. With respect to whether the harm was on account of a protected ground, the first and the primary basis was his political opinion, and the evidence in the record shows that it was not a political opinion that was motivating the Maoists. It was, in fact, financial gain. At no point did he express a political opinion to the Maoists. The Maoists never expressed that they were extorting him because of a political opinion. It was, as he testified, about money. Finally, with respect to the social group, as we argued in our supplemental brief, should this Court reach that ground, which it need not do in light of the previous points, the appropriate course is to remand in light of this Court's intervening decisions. If there are no further questions, the government rests on its briefs. I have no questions. Of course. I'm sorry. Judge Gould, did you say you have no questions? Yes, I have no questions. Okay. Very good. Then let's give the Petitioners' Counsel maybe two minutes for rebuttal. Again, we just reiterate what we elaborated in the brief as to well-founded fear of persecution. It should be noted that Maoist guerrillas to this day continue, as indicated, and the source I'm using is the 2013 CIA country fact sheet, indicates that Maoist guerrillas in the form of the unified Communist Party of Nepal, Maoists, is a faction of the Maoists and continue their policies of extortion, threatening, and violence just as they had when the respondent lived in Nepal. So the threat continues to be viable. He's an identified individual. How do you respond to the government's argument that, okay, well, even if there are threats, it's purely economic in nature. It's not political at all. No. The as to persecution or as to the particular as to It's not on account of a protected ground. No. On account of the nexus is determined by why the action was taken by the persecutors. No doubt one of their objectives was to collect money and fund their parties. They've stated that. But they've targeted people for political purposes. It wasn't just a random I'll catch you on the street and I'm going to rob you. It was a selection of individuals called local elites and landowners, the local elites being businesspersons, schoolteachers, and NGO workers. So they were very they have identified defined subgroups to extract money. So it wasn't just the extraction of money. It was the extraction of money from certain categories. And that would be my position. And one of those categories was business owners. And I have nothing else to say. Any final questions? Okay. Thank you very much. Thank you. Thank you. Thank you very much for your arguments on both sides. The case just argued will stand submitted. Thank you, sir. Thank you. And I'm dismissed, correct? I'm sorry? Nothing else. Dismissed, correct?  Thank you. This case is submitted.
judges: Oliver, Gould, Watford